IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. PD-0608-08






EMILY HARDY and HIRAM K. MYERS, Appellants


v.


THE STATE OF TEXAS





ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

FROM THE TENTH COURT OF APPEALS

McLENNAN COUNTY





 Keller, P.J., filed a dissenting opinion in which Meyers, Keasler, and
Hervey, JJ., joined.





 The problem with the court of appeals opinion is that it fails to consider the evidence in the
light most favorable to the verdict. (1) Unfortunately, this Court repeats the mistake. 

 Each appellant was charged by information alleging that on the 14th day of April, 2006, the
appellant:

 did then and there, without legal privilege or authority, intentionally or knowingly
disobey a reasonable request or order to move issued by Sgt. Janet Smith, a person
the defendant knew to be a peace officer with authority to control the use of the
premises, to prevent obstruction of a street, to-wit: Prairie Chapel and Morgan Road,
Crawford, Texas, to which the public or a substantial group of the public had access.


 The Court says, "Nothing in the records indicates that appellants, by sitting in a small tent
erected in the bar ditch or by any other conduct, rendered passage more unreasonably inconvenient
or hazardous than by sitting in a chair in the same location." (2) But there is evidence that it did.
Captain Vanek testified as follows regarding the hazard caused by people in tents:

 With individuals staying in tents in this type of area - the roads are very narrow,
barely wide enough for two vehicles to pass safely, and the right-of-way from this
road to the fences is narrow also. And if someone was driving down the road and
had some type of mechanical failure on the vehicle or possibly they thought that
another oncoming vehicle might hit them, they would have to take evasive action and
possibly go into the ditch. And someone sitting in a tent wouldn't be able to see the
hazard coming toward them, where if they were standing out along the side of the
road, they would at least be able to react to try to get out of the way.

He also expressed concern over the fact that farm equipment commonly seen on the country roads
takes up the whole roadway, which would cause an oncoming vehicle to have to pull into the ditch. 
Captain Vanek's one concern was the safety of everyone involved. (3)

 Sergeant Channon testified that people inside a tent would not be aware that a vehicle was
coming. When cross-examined about how reasonable it was to assume that a car would come by at
such a speed that he couldn't stay on the road, the sergeant answered, "I think it's very reasonable." 
 The Court also says, "Neither is there any evidence that the tents themselves obstructed
passage or made it hazardous." I find the following in the record regarding whether the tents
obstructed passage or made it hazardous: Sergeant Channon testified that when he arrived at the
location, he observed that "there was a tent that was too close to the roadway which would cause an
obstruction, as far as two vehicles passing simultaneously, side by side." He continued, saying that
vehicles "don't necessarily have to be in the traffic lane to obstruct the roadway," and in his opinion
if two vehicles "cannot pass going opposite directions without hitting something, then it's an
obstruction of that roadway." It did not appear to him that two vehicles could pass without hitting
each other or getting off the road. And there was testimony that during the large protest the prior
August, there was at least one incident in which two pickup trucks were traveling down the road and
their mirrors hit and caused damage to the vehicles because there was not enough room to pass. 

 Furthermore, Captain Vanek was asked, regarding the people in the tent, "But they were
obstructing the passage of the street?" to which he answered, "Right." (4) 

 And Lieutenant Smith (5) was asked, "And do you believe that those tents and the people inside
of the tents posed an obstruction to that roadway?" She answered, "Yes." (6) 

 Video recordings of the offenses were introduced into evidence by both the State and the
defense. I have watched them, and they provide further support for the convictions. Not only do
they show Lieutenant Smith reading the warnings, they show how close the tents were to the paved
part of the roadway. 

 So there was in fact evidence that appellants, by sitting in a tent beside the road, rendered
passage unreasonably inconvenient or hazardous, and there was in fact evidence that the tents
themselves obstructed passage or made it hazardous. As a reviewing court, we may not simply
disregard that evidence. The jury was entitled to believe it, and we defer to that determination. (7)

 There are a number of other assertions in the Court's opinion that refer to evidence that does
not merit deference in a legal-sufficiency analysis. For example, the Court says, "The demonstrators
were informed at the scene that they were being arrested for violating the tent ordinance, as they had
intended..." That is indeed what appellant Hardy testified to, but the jury was under no obligation
to believe that testimony. More to the point, the testimony about the county no-camping ordinance
is irrelevant in a legal-sufficiency review relating to convictions for violation of a state statute. 

 The Court quotes the testimony of appellant Hardy that if the officers had said they were
concerned for the protesters' safety she would have gotten out of the tent. This quotation is inapt
for a number of reasons. First, of course, the jury did not have to believe the testimony. Second, the
document read to the protesters that day warned explicitly of the danger to the people in the tents,
including by beginning, "In order to keep you safe..." Third, it is irrelevant to the question of
whether appellants violated §42.03.

 The Court says the State appears to conflate the county ordinance and the statute, but it seems
to me that it was the defense that first did so, and now it is the Court itself. At trial, it was the
defense that sought to admit the order of the commissioners court. The State objected, saying "this
trial doesn't have anything to do with the ordinance." Claiming the evidence was irrelevant, the
prosecutor continued, "This trial is about 42.03 of the Penal Code. We don't want to confuse the
issue with an ordinance when it's not what the defendants have been charged with." The Court says,
"Proof that appellants violated the county ordinance is not proof that they violated §42.03(a)(2)(A)." 
True enough, but the point is irrelevant. As far as the State was concerned, this case was never about
the ordinance; it was simply a prosecution for violation of §42.03. If there is confusion about the
two issues, it is none of the State's doing.

 Also, in saying that §42.03 "prohibits obstruction only of the part of a road easement that is
used for vehicular travel" the Court seems to ignore the language of the statute that prohibits
obstruction of "any other place used for the passage of persons." I do not agree that the State
emphasized "obstruction" as the lack of ability of the demonstrators to view their surroundings, but
even if that were accurate, it would not matter in a legal-sufficiency review. Contrary to the
conclusion of the Court, the statute does not limit "hazardous" either to people on the road or off the
road. I must disagree with the Court's statement, "The statute expresses concern for the safety of
those who are traveling, not those who may be on the side of the road." 

 There are what I believe to be other discrepancies between the trial record and the Court's
opinion, and they are relatively minor. I mention them, however, because they affect the overall
picture of the situation portrayed by the Court. The Court says the order to move would be
unreasonable when applied to persons "such as appellants, who were ordered to remain in the bar
ditch and off of the road and did so." But this totally misconstrues both the order and the facts. The
protesters were told to stay off the road. They were also told that they would be arrested if they got
into a tent. Those that stayed off the road and did not get into a tent were not arrested. Appellants
got into a tent and were arrested. It is only in this sense that appellants were "ordered to remain in
the bar ditch and off the road and did so." Another instance of confusion by the Court is in saying
that Lieutenant Smith agreed that the tents were in the right-of-way "as defined by the county
ordinance." I do not find this modifier in Lieutenant Smith's testimony. (8)

 The Court says, "During August 2005, there were no major incidents involving demonstrators
and no arrests for obstructing a roadway." There was testimony to that effect, but there was also
testimony that in August there were major disruptions and the situation had "gotten out of control." 
Several hundred vehicles parked along the ditches before officers could get there and prevent
anything that would be a safety hazard to anyone. Photographs from the August protest show tents,
cars, and port-a-potties encroaching on the pavement, and people sitting, standing, and walking on
the pavement. Implicit in the testimony of one of the officers is that no arrests were made because
there were so many protesters and so few officers. The situation in August had gotten out of hand,
and law enforcement officers - quite reasonably - wanted to prevent that from happening again. 

 I respectfully dissent. 

Filed: April 22, 2009

Publish
1. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).
2. The issue is not actually the comparative danger of the two.
3. People in chairs and standing around asked to be arrested, but the officers refused to
arrest anyone outside the tents because they did not believe it was hazardous.

4. Captain Vanek also testified that the people in the tent were not obstructing the actual
paved part of the street, but they were obstructing the right-of-way.
5. She was a sergeant on the date of the offenses.
6. Appellant's objection to the question and answer was sustained, but no instruction to
disregard was requested or given to the jury. 
7. Clayton v. State, 235 S.W.3d 772, 778 (2007).
8. I note also that the Court's discussion of common usage of the term "highway" is
unnecessary. The jury charge defines "highway or street" as "the width between the boundary
lines of a publicly maintained way any part of which is open to the public for vehicular travel."